O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGEL OCHOA LOPEZ, | ) Case No. CV 07-7471-OP |
| Plaintiff, | ) |
| v. | ) MEMORANDUM OPINION; ORDER |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) |
| Defendant. | ) |

The Court[1] now rules as follows with respect to the disputed issues listed in the Joint Stipulation ("JS").[2]

/ / /
/ / /
/ / /

**I.**

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (See Dkt. Nos. 8, 9.)

[2] As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the Administrative Record, and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

1

## DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues which Plaintiff raises as the grounds for reversal and/or remand are as follows:

1. Whether the Administrative Law Judge ("ALJ") properly assessed Plaintiff's severe impairments;
2. Whether the ALJ erred by failing to properly evaluate Plaintiff's subjective symptoms and credibility; and
3. Whether the Appeals Council properly considered the additional evidence.

(JS at 3.)

## II.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (citation omitted). The Court must review the record as a whole and consider adverse as well as supporting evidence. Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

///

**III.**

# DISCUSSION

## A. The ALJ Properly Assessed Plaintiff's Orthopedic Impairments.

Plaintiff contends that the ALJ erred in his assessment of Plaintiff's severe orthopedic impairments. (JS at 3-5, 7.) Specifically, Plaintiff argues that the ALJ (1) accorded improper weight to the opinion of the consultative examiner (id. at 4-5); (2) failed to consider the entire time period at issue (id. at 3); and (3) failed to develop the record (id. at 4).

### 1. The ALJ Afforded Proper Weight to the Consultative Examiner.

Plaintiff contends that the ALJ afforded improper weight to the opinion of the consultative examiner, Dr. Timothy K. Ross. (Id. at 4-5.) Specifically, Plaintiff argues that "[t]he consultative examiner's report cannot serve as a basis to support a finding of non-disability because the examiner performed a one time evaluation, and it is not clear whether or not he reviewed any medical records." (Id.) The Court disagrees.

It is well-established in the Ninth Circuit that a treating physician's opinions are entitled to special weight, because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. See 20 C.F.R. § 404.1527(d)(2). If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir.1996); Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). If the treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record.

Thomas, 278 F.3d 947, 957 (9th Cir. 2002); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).

However, the Ninth Circuit also has held that "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas, 278 F.3d at 957; see also Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992). A treating or examining physician's opinion based on the plaintiff's own complaints may be disregarded if the plaintiff's complaints have been properly discounted. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999); see also Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997); Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995). Additionally, "[w]here the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict." Andrews, 53 F.3d at 1041; Magallanes, 881 F.2d at 751; Miller v. Heckler, 770 F.2d 845, 849 (9th Cir. 1985).

Here, as to Plaintiff's treatment records, the ALJ summarized the findings as follows:

> The medical records indicate that claimant has only required sporadic treatment for complaints of back pain. Apparently, in September 2003, imaging of the claimant's lumbar spine revealed a disc herniation L1-L2. Subsequently, in July 2004, electrodiagnostic studies revealed evidence of radiculopathies involving the bilateral L5 and S1 nerve roots. Around that time, a clinic note indicates that the claimant complained of radiating low back pain. Reportedly, in 2003, the claimant received epidural blocks and therapy to treat his back pain with

reported improvement. Although clinic notes document some restrictions in lumbar motion as well as diminished sensation in the right and left L2 and L4 regions, the claimant's gait and motor strength were reported to be intact. In fact, after August 2004, the documentary record fails to show that the claimant required any additional medical treatment. As such, it is reasonable to assume that his symptoms remained stable after that time. There is absolutely no indication in the claimant's treating records that his doctors ever felt that he would be unable to perform light or medium exertional activities for a period of twelve continuous months.

(AR at 24 (citation omitted).)

The ALJ's assessment of Plaintiff's treatment records is consistent with the medical evidence. (Id. at 123-28.) First, on September 19, 2003, Dr. Keith Mootoo conducted an MRI of Plaintiff's lumbar spine, which revealed a "disc herniation (extruded disc)." (Id. at 123.) However, Dr. Mootoo also stated, "There are no other disc protrusions or disc herniations. There is no evidence of spinal stenosis or neural foraminal stenosis. No intradural abnormalities are noted." (Id.) Consistent with the ALJ's findings above, Dr. Mootoo does not provide any functional limitations for Plaintiff. (Id.)

Next, on August 12, 2004, Dr. Dane Copeland provided Plaintiff with an "Electromyogram Report." (Id. at 125-26.) In the report, Dr. Copeland indicated that all Plaintiff's nerve conduction findings were within "normal limits." (Id. at 125.) As to Plaintiff's sensory nerve findings, Dr. Copeland opined, "Left superficial peroneal and sural nerves SNAP show normal peak latencies and amplitudes with mildly slowed conduction velocities consistent with cold limb temperatures." (Id. at 126.) Dr. Copeland thereafter concluded that Plaintiff has "[m]oderate chronic radiculopathy involving the right S1 spinal root," and

"[t]race/mild chronic radiculopathies involving bilateral L5 and left S1 spinal roots." (Id.) Here again, Dr. Copeland fails to provide any limitations on Plaintiff's functional abilities. (Id. at 125-26.)

Finally, from June 29, 2004, through August 17, 2004, Dr. Steven Schwartz provided orthopedic assessments of Plaintiff. (Id. at 127-28.) Dr. Schwartz noted that as to Plaintiff's "[s]ensory system, pin acuity is diminished R and L L2 and L4, and communication is difficulty to make a complete sensory examination." (Id. at 127.) Dr. Schwartz assessed a "R L1-L2 HNP" and a lumbar sprain. (Id. at 128.) Further, his treatment plan included, *inter alia*, pain mediation, physical therapy exercises, and further medical testing. (Id.) In a subsequent evaluation, Dr. Schwartz noted that Plaintiff's posture, gait and transfers were intact. (Id.) Additionally, while Dr. Schwartz concluded that there Plaintiff had an "extruded disc fragment," he also indicated that "there is no significant pathology." (Id.) Similar to Plaintiff's other treating physicians, Dr. Schwartz also failed to provide any limitations on Plaintiff's functional abilities. (Id. at 127-28.) Thus, the ALJ did not err in his assessment of the medical evidence.[3]

Further, after considering Plaintiff's treatment records, the ALJ stated:

> Moreover, when a consultative examiner evaluated the claimant in November 2004, he was reported to walk with a normal gait and a normal heel to toe pattern. He did not require the use of an assistive device to ambulate. He also had normal swing and stance phases. The claimant did demonstrate some mild limitations in thoracolumbar motion with pain. However, no spasm was noted. Additionally, he was reported

---

[3] While the ALJ is not required to accept the opinion of treating physicians whose opinions are inadequate and brief, the Court notes that Plaintiff does not contend that the ALJ improperly discounted or rejected the opinions of his treating physicians. See generally JS. Thus, the Court declines to address this issue.

>  to have markedly overstated tenderness and very strongly positive Waddell's signs. Neurological findings were normal. Timothy K. Ross, M.D., the consultative examiner, did not indicate that the claimant had any functional limitations that would impact his ability to perform medium work.

(AR at 24-25 (citation omitted).) Here, after conducting a "Comprehensive Orthopedic Consultation," Dr. Ross found that Plaintiff has "non-specific polysomatic musculoskeletal complaints." (Id. at 142.) As to Plaintiff's functional limitations, Dr. Ross concluded:

> Based on today's examination, I am unable to identify any significant impairment-related physical limitation. There is no requirement for any form of hand-held ambulatory assistive device nor any form of orthosis.

(Id. at 143.) Thus, the ALJ's assessment is also consistent with the findings of Dr. Ross. (Id. at 140-44.)

To the extent that Plaintiff claims that Dr. Ross' opinion was not based on the medical evidence or otherwise insufficient, Plaintiff's claim is without merit. Dr. Ross conducted a comprehensive orthopedic examination, including Plaintiff's history, subjective complaints and objective findings. (Id. at 140-44.) The opinion of the consultative examiner, if supported by clinical tests and observations upon examination, are substantial medical evidence and may be relied upon by the ALJ in order to assess a plaintiff's limitations. See Andrews, 53 F.3d at 1041. Thus, the ALJ properly relied upon the opinion of the consultative examiner.

Based on the foregoing, the Court finds that the ALJ afforded proper weight to Dr. Ross' medical opinions. Thus, there was no error.[4]

---

[4] Even assuming the ALJ erred in his consideration of the medical evidence, (continued...)

### 2. **The ALJ Considered the Time Period at Issue.**

In assessing his disability, Plaintiff alleges that the ALJ failed to consider the record beginning from the date of the initial application. (AR at 3.)  Here, Plaintiff filed an application for disability insurance benefits on September 1, 2003 ("protective filing date"). (Id. at 56-58, 76.)  As discussed above, the ALJ considered the entire medical record, which consisted of six pages of treatment records (id. at 123-28), and four pages of a consultative orthopedic examination (id. at 140-44).  See supra Discussion, Part III.A.1.  Plaintiff also argues that the ALJ failed to consider the medical records submitted to the Appeals Council documenting Plaintiff's continuing orthopedic treatment. (JS at 4.)  However, as the Court discusses below, this evidence was submitted to the Appeals Council, not the ALJ.  As a result, the ALJ could not have erred by not considering this evidence.  See infra Discussion, Part III.C.  Thus, Plaintiff's contentions are without merit.

### 3. **The ALJ Did Not Fail to Properly Develop the Record.**

Plaintiff contends that the ALJ failed to develop the record after Plaintiff, who was unrepresented at the hearing, testified that he was receiving medical treatment. (JS at 4.)

The ALJ has an independent duty to fully and fairly develop a record in order to make a fair determination as to disability, even where the claimant is represented by counsel.  See Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003);

---

[4](...continued)
any error was harmless.  See Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990) (harmless error rules applies to review of administrative decisions regarding disability.)  Dr. Ross' findings are consistent with the opinions of Plaintiff's treating physicians, who all failed to provide any limitations on Plaintiff's functional abilities. (AR at 123-28, 140-44.)

see also Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citing Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)); Crane v. Shalala, 76 F.3d 251, 255 (9th Cir. 1996) (citing Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)).  The duty is heightened when, as here, the claimant is not represented by counsel.  Celaya, 332 F.3d at 1183; see also Burch v. Barnhart, 400 F.3d 676, 682-83 (9th Cir. 2005) (the Ninth Circuit distinguished Burch from Celaya at least in part, based on the fact that Burch was represented by counsel).  Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry."  See Tonapetyan, 242 F.3d at 1150 (citing Smolen, 80 F.3d at 1288).  However, it is the plaintiff's burden to prove disability.  Baylis v. Barnhart, 427, F.3d 1211, 1217 (9th Cir. 2005) ("The claimant bears the burden of proving that she is disabled.") (citing Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999)).

Prior to the July 13, 2006, hearing, the ALJ requested medical records from Paramount Physicians Medical Center and the Neurosciences Institute.  (AR at 129-39.)  Paramount Physicians Medical Center returned the request, indicating that they did "not have the information requested."  (Id. at 131.)  No information was received from Neurosciences Institute in response to the request.  (Id. at 137.)  Thereafter, the ALJ sent correspondence to the Plaintiff informing him of the exhibits contained in his file.  (Id. at 122, 169A.)  In the letter, the ALJ requested that Plaintiff, "furnish all medical records (not duplicates) from one year prior to the alleged onset date to the present and any other relevant medical records not already in file."  (Id.)  There is no indication in the record that Plaintiff submitted any additional medical records prior to the July 13, 2006, hearing.

At the July 13, 2006, the Plaintiff appeared in pro per at the hearing.  (AR at 195-210.)  After Plaintiff provided testimony about his treatment, the ALJ stated:

I'm going to ask you to sign a release for us so that we can ask [your

>>treating physicians] to send us the records . . . . And when I get that I will send you a copy so you can see what the records show, and comment about them to me . . . . At that point, I will close the record and make a decision in your case.

(Id. at 209-210). During the hearing, Plaintiff provided the ALJ with business cards or contact information of his medical providers. (Id. at 206-09.) After the hearing, in a "Report of Contact" dated August 25, 2006, a case worker indicated that medical records were unsuccessfully requested twice in writing and once by telephone from Atlantic Avenue Medical Clinic. (Id. at 171.) Notably, there was no other medical evidence received or submitted until after the ALJ's unfavorable decision. (Id. at 177-94.)

In this case, the Court finds that the record before the ALJ was neither ambiguous nor inadequate to allow for proper evaluation of the evidence. Substantial evidence supported the ALJ's decision that Plaintiff was not disabled. (Id. at 23-27); see supra Discussion, Part III.A.1. Further, the ALJ gave Plaintiff ample opportunity and instruction regarding sending additional records should he desire to supplement the record, and he kept the record open so that it could be supplemented. Moreover, the ALJ attempted to retrieve medical records from the sources specified by Plaintiff. Thus, the ALJ more than adequately satisfied his duty to develop the record. See Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1998).

Even assuming the ALJ failed to properly develop the record, any such error was harmless. See Curry, 925 F.2d at 1131. First, the ALJ's decision that Plaintiff was not disabled was supported by substantial evidence. (AR at 23-27.) Second, Plaintiff had ample opportunity to supplement the record with additional materials and did in fact submit such materials to the Appeals Council. (Id. at 177-94.) Additionally, despite Plaintiff supplementing the record with medical records

allegedly evidencing continuing orthopedic treatment, the Appeals Council properly did not reverse the ALJ's decision. (Id. at 5-6); see infra Discussion, Part III.C. Thus, Plaintiff's argument that this matter should be remanded because the ALJ failed to properly develop the record is without merit.

**B.     The ALJ Properly Evaluated Plaintiff's Credibility.**

Plaintiff contends the ALJ failed to provide "persuasive" or clear and convincing reasons for rejecting her testimony regarding his subjective symptoms. (JS at 7-8, 10.) The Court disagrees.

An ALJ's assessment of pain severity and claimant credibility is entitled to "great weight." Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). When, as here, an ALJ's disbelief of a claimant's testimony is a critical factor in a decision to deny benefits, the ALJ must make explicit credibility findings. Rashad v. Sullivan, 903 F.2d 1229, 1231 (9th Cir. 1990); Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981); see also Albalos v. Sullivan, 907 F.2d 871, 874 (9th Cir. 1990) (an implicit finding that claimant was not credible is insufficient).

Under the "Cotton" test, where the claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce some degree of pain and/or other symptoms, and the record is devoid of any affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain and/or other symptoms only if the ALJ makes specific findings stating clear and convincing reasons for doing so. See Cotton v. Bowen, 799 F.2d 1403, 1407 (9th Cir. 1986); see also Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Bunnell v. Sullivan, 947 F.2d 341, 343 (9th Cir. 1991).

To determine whether a claimant's testimony regarding the severity of his

symptoms is credible, the ALJ may consider, *inter alia*, the following evidence: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; and (4) testimony from physicians and third parties concerning the nature, severity, and effect of the claimant's symptoms. Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002); see also Smolen, 80 F.3d at 1284.

Social Security Ruling ("SSR") 96-7p[5] further provides factors that may be considered to determine a claimant's credibility such as:  1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain and other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.  SSR 96-7p.

Here, the ALJ expressly discredited Plaintiff's subjective symptoms of back pain for the following reasons:  (i) Plaintiff's allegations were unsupported by the objective medical evidence; (ii) Plaintiff's consultative examination suggested he

---

[5] Social Security Rulings are binding on ALJs.  See Terry v. Sullivan, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990).

was exaggerating his symptoms; and (iii) Plaintiff testified he began working part-time in June 2005 and admitted he could probably perform full time work. (AR at 25.)

The ALJ relied upon the treatment records and the consultative orthopedic examination to discredit the alleged severity of Plaintiff's disabling pain in his lower back. (Id. at 24-25.) The ALJ stated:

> The documentary evidence does show that the claimant has impairments, which could produce some "excess" symptoms. However, these symptoms would not impact the claimant's ability to perform work activities within the parameters of the functional assessment of the Administrative Law Judge.

(Id. at 25.) The record supports the ALJ's findings.

First, the ALJ relied upon the findings of Plaintiff's treating physicians who conducted MRIs and electromyogram reports of Plaintiff's lumbar spine, and provided normal and/or unremarkable findings. (Id. at 123-28.) As stated above, none of Plaintiff's treating physicians provided any limitations on Plaintiff's functional abilities. (Id.) As a result, despite the findings of Plaintiff's treating physicians, they provided no objective medical evidence to support Plaintiff's contentions of disabling pain, which the ALJ properly relied on to discredit Plaintiff's allegations. (Id. at 24-25, 123-28.) Moreover, the ALJ also relied upon the opinion of the consultative physician, Dr. Ross, to support his adverse credibility determination as to Plaintiff's allegations of disabling back pain. (Id. at 24-25, 140-44.) As discussed above, Dr. Ross concluded that Plaintiff had no "significant impairment-related physical limitation." Id. at 143; see supra, Discussion, Part II.A.1.

After considering these assessments and Plaintiff's allegations of disabling

back pain, the ALJ adopted the following residual functional capacity ("RFC"):

> Giving the claimant the benefit of the doubt, the Administrative Law Judge concludes that the claimant is limited by his inability to lift more than fifty pounds on an occasional basis and twenty-five pounds on a frequent basis, and by his inability to do more than occasional stooping.

(AR at 24.) Accordingly, the ALJ considered all the medical sources, including Plaintiff's treating physicians and the consultative examiner, to discredit Plaintiff's contentions of disabling pain. (Id. at 24-25); see also Thomas, 278 F.3d at 958-59; Smolen, 80 F.3d at 1284; SSR 96-7p.

Finally, the ALJ also discounted Plaintiff's credibility as to his subjective symptoms based upon evidence of exaggeration of symptoms and work performed by Plaintiff after the protective filing date. (AR at 25.) First, the ALJ relied upon the opinion of Dr. Ross to evidence exaggeration of Plaintiff's symptoms. (Id.) The ALJ provided, "Dr. Ross indicated that the claimant's complaints were markedly overstated, suggesting that he was exaggerating his symptoms. This causes the Administrate Law Judge to doubt the claimant's allegations." (Id.) The record supports the ALJ's opinion regarding exaggeration, as Dr. Ross noted that Plaintiff "displayed a notable degree of anxious and psychosomatically mediated musculoskeletal complaints" during the course of the orthopedic evaluation. (Id. at 143.) Additionally, the ALJ noted that Plaintiff provided testimony that he began working part-time in June 2005 at the medium exertional level, and he could probably perform full-time work, if it did not involve heavy lifting. (Id. at 25, 199-204.) The ALJ stated, "As such, by his own admission, the claimant indicated that he could perform work activities consistent with the functional assessment of the Administrative Law Judge." (Id. at 25); see also Thomas, 278 F.3d at 958-59; Smolen, 80 F.3d at 1284. Accordingly, the ALJ properly relied upon evidence of exaggeration and work performed after the disability onset date to discount

Plaintiff's credibility.

Based on the foregoing, the Court finds that the ALJ provided clear and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's credibility regarding his subjective contentions of disabling back pain. See Cotton, 799 F.2d at 1407; see also Smolen, 80 F.3d at 1281; Dodrill, 12 F.3d at 918; Bunnell, 947 F.2d at 343; SSR 96-7p. Thus, there was no error.

### C.  The Appeals Council Properly Considered Plaintiff's Additional Evidence.

Plaintiff next argues that the ALJ failed to consider the additional evidence submitted to the Appeals Council. (JS at 10, 12; AR at 177-92.) However, Plaintiff submitted additional evidence to the Appeals Council *after* the ALJ issued his decision. (AR at 193-94.) As a result, Plaintiff's contention that the ALJ failed to consider this additional evidence is without merit. The Court construes Plaintiff's argument to be that the Appeals Council improperly failed to consider this additional evidence. (JS at 10, 12.)

If new and material evidence is submitted after the ALJ's decision, the Appeals Council shall consider such evidence "only where it relates to the period on or before the date of the [ALJ] hearing decision." See 20 C.F.R. § 404.970(b). The Appeals Council will overturn an ALJ's decision only when it determines, after a review of the entire record, including the new and material evidence, that the decision is contrary to the weight of the evidence. Id.; see also Macri v. Chater, 93 F.3d 540, 544 (9th Cir. 1996) (citing Bates v. Sullivan, 894 F.2d 1059, 1064 (9th Cir.1990), overruled on other grounds by Bunnell v. Sullivan, 947 F.2d 341, 342 (9th Cir. 1991) (en banc)). Moreover, in the Ninth Circuit, where a claimant has submitted additional materials to the Appeals Council in requesting review of the ALJ's decision, the district court may consider the new evidence "because the Appeals Council addressed them in the context of denying [the claimant's] request

15

for review." Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir. 2000) (citing Ramirez v. Shalala, 8 F.3d 1449 (9th Cir. 1993)).

Here, the additional evidence consisted of the following: (1) neurological consultation and observation by Dr. Fidel Santa-Cruz (AR at 177-83); (2) MRIs of the lumbar cervical spine from Lynwood Medical Imaging (id. at 184-87); (3) authorization letters from Huntington Park Mission Medical Group (id. at 188-90); and (4) laboratory test results by Quest Diagnostics (id. at 190-92). The additional evidence was considered and addressed by the Appeals Council in the "Notice of Appeals Council Action" issued on October 1, 2007. (Id. at 5-7, 10.) In denying Plaintiff's request for review, the Appeals Council provided:

> In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council. [¶] We found that this information does not provide a basis for changing the Administrative Law Judge's decision.

(Id. at 5-6.)

Because the Appeals Council specifically addressed the additional evidence in denying Plaintiff's request for review, this Court may review the additional evidence. See Harman, 211 F.3d at 1180; see also Ramirez, 8 F.3d at 1452. After reviewing the additional evidence, the Court agrees with the Appeals Council that the additional evidence is insufficient to warrant a remand. First, Dr. Cruz's neurological observations record Plaintiff's subjective complaints and history of compression neuropathy and chronic back pain, but do not provide any functional limitations. (AR at 177-83.) Here, where the ALJ has properly discounted Plaintiff's credibility, Dr. Cruz's opinion based primarily on Plaintiff's subjective complaints may be disregarded. See supra Discussion, Part III.B; see also Morgan, 169 F.3d at 602; Sandgathe, 108 F.3d at 980; Andrews, 53 F.3d at 1043. Second, while the MRI of the cervical spine provided mild degenerative changes in the

spine, Dr. Robert Zea nonetheless concluded, "[t]he lumbar spine is otherwise unremarkable except for a modest posterior disc bulge at L5-S1, which does not appear to be clinically significant." (AR at 184-87.) Moreover, the authorization letters and the laboratory records, in addition to the MRI results, provide no limitations on Plaintiff's functional abilities or other evidence that would support a different RFC finding than that of the ALJ. (Id. at 184-92.) Based on the foregoing, the Court finds that the additional evidence is insufficient to warrant remand.

## IV.

## ORDER

IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

Dated: June 9, 2009

HONORABLE OSWALD PARADA
United States Magistrate Judge